**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JACOB MICHAEL WARE,**

     **Plaintiff,**

**vs.**                      **Case No.  1:17cv183-MW/CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Deputy Commissioner for Operations ("Commissioner") of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

Plaintiff previously received SSI based on his disability as a child. Tr. 17.[1]  When Plaintiff reached the age of eighteen, the Commissioner was required to redetermine his eligibility for benefits under the adult standards for disability.  On November 17, 2014, it was determined that Plaintiff was no longer disabled as of November 10, 2014.  Tr. 80-86.  The determination was upheld on reconsideration after a disability hearing before a State agency Disability Hearing Officer.  Upon Plaintiff's request, a hearing was held on February 24, 2016, before an Administrative Law Judge (ALJ) by video in Jacksonville, Florida.  Tr. 36-76.  Plaintiff, represented by counsel, appeared and testified in Gainesville, Florida, as did his mother, Elisa Anne Ware.  Impartial vocational expert Melissa Tanner appeared at the hearing and testified.  Plaintiff based his claim for disability upon severe impairments including attention deficit hyperactivity disorder, anxiety disorder with panic attacks, heart palpitations, hypertension, asthma, and a history of pancreatitis.

The ALJ issued a decision on May 3, 2016, finding upon redetermination of Plaintiff's continuing eligibility for SSI upon turning age

---

[1] Citations to the transcript/administrative record contained in ECF No. 10 shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

eighteen under section 1614(a)(3)(H) of the Social Security Act, that Plaintiff's disability ended on November 10, 2014, and he has not become disabled since that date.  Tr. 29.  The Appeals Council denied review on May 18, 2017.  Tr. 1-6.  Thus, the decision of the ALJ became the final decision of the Commissioner and is ripe for review.  Accordingly, Plaintiff, appearing by counsel, filed a Complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.

### A. Hearing Testimony

At the hearing held on February 24, 2016, Plaintiff testified that he is nineteen years old and lives with his mother and sister.  Tr. 41-42.  He testified that he has a driver's license but finds it difficult to drive, and does so only if absolutely necessary, due to being nervous behind the wheel. Tr. 43.  He testified that he was currently experiencing pancreatitis making walking difficult, and for that reason he was in a wheelchair.  *Id.*  He was currently in twelfth grade and has never worked.  Tr. 44.  When asked the main reason he feels he cannot work, Plaintiff testified that his anxiety and claustrophobia make it hard to work around people.  He said he did not have the "social capacity" to be around strangers.  *Id.*

Plaintiff testified that the anxiety began when he was around age eleven or twelve, and he is currently taking Valium for anxiety.  Tr. 44-45.

Prior to that, he was taking Klonopin, and had tried other medications to treat his anxiety.  Tr. 45.  Plaintiff testified he has four or five panic attacks in a week and often will hyperventilate and have to lie down until it passes.  Sometimes, he said, he gets so worked up he will pass out.  *Id.*  He attends school because he has to, but all the talking and people make him nervous.  Tr. 46.  He said he often must go home, and estimated that occurs about ten times a month.  When he has a panic attack, he said his heart will race, he feels shaky and sweaty, and he will "overwork myself" to the point where he feels like he will die.  Tr. 47.  The attacks usually last about one hour if he gets his medication.  Tr. 48.  Other times, the attacks will last up to six hours and is sometimes so severe he will urinate on himself.  Tr. 48.  He testified that his attacks have become more frequent over time.  *Id.*

Plaintiff testified that other factors that contribute to his difficulty in performing tasks is his nervousness that causes him to shake and makes it difficult to pick up objects.  Tr. 49.  He testified that his lower back also gets sore but the doctors have not been able to find anything wrong with it.  *Id.*  He described having high blood pressure in the past and had been prescribed heart medication, but had to stop taking it due to pancreatitis.  Tr. 51.  He described his pain from pancreatitis at the current time as a 7, and said he does not really do any activities but "sit at home and try to relax

and try to make the most out of my day by just sitting and talking to my mom and [his] sister." Tr. 53.  When he has pancreatitis he can stand for only five or ten minutes.  Tr. 54.  He testified he does not walk much, maybe several hundred feet while at school.  *Id.*  As for lifting, he testified he can lift two or three pounds comfortably.  *Id.*  He has a close friend who comes to the house, but he does not otherwise socialize.  Tr. 55.  Plaintiff testified he has difficulty following directions or instructions due to his anxiety disorder, and has a terrible time focusing for school work.  *Id.*

Plaintiff testified he smokes marijuana several times a week because it calms and relaxes him.  Tr. 57.  He does not drink alcohol.  Tr. 52.  His typical school day involves being taken to school and being picked up by his mother.  He then will go home and try to sleep.  He explained that he does not do any household chores or cook because he can't.  Tr. 57-58. He does not shop because he does not like public places and becomes panicky.  *Id.*  He does not exercise, but on rare occasions has gone fishing with his mother, sister, and friend.  *Id.*  He has turtles and takes care of them.  Tr. 59.  When asked what he does on weekends, he said he does not do much but watch television or play nonviolent video games.  Tr. 59-60.  He will try to do homework if he has it.  Tr. 60.

On questioning by his counsel, Plaintiff testified that he loses focus every day throughout the day.  Tr. 60-61.  He attends private school because he does not want to be in public school with so many students. He is almost always tardy because he has a hard time waking up in the morning.  Tr. 61.  He said he is often lethargic or sleepy in class because his nerves act up and his mind will shut down.  Tr. 63.  He has had behavior problems at school because the "[k]ids like to try and test patience, and my patience wears very thin.  I do have panic attacks, and I am a very hurt individual, but you can only push me so far."  Tr. 63. Plaintiff said he was retained in sixth grade because he had problems focusing in math, and transferred to the private school around the eighth grade.  Tr. 64.

Plaintiff's mother Elisa Anne Ware testified that Plaintiff transferred to private school due to "bad behavior" and the public school recommended he transfer.  Tr. 65-66.  She has been called to school on average once a week for Plaintiff's loud outbursts, cursing at the teachers, sleeping in class, being argumentative, and other misbehavior.  Tr. 67.  She testified that she and Plaintiff's sister tolerate his behavior because they know he has mental problems, but they do not get along.  Tr. 68.  If he does not get his way, he has a tantrum, he does things without thinking, will not pick up

after himself or clean his room, and mainly sleeps all day. *Id.* He has been physically aggressive with his mother. *Id.* He misses many days of school a month and only does about half of his schoolwork. Tr. 69.

Ms. Ware testified that Plaintiff misses most of the school days in the month, which she assumes is due to depression. She said she has been taking him to psychiatrists for help and has been begging Plaintiff to get out of bed, but he "cannot get out of bed. He can't function like a normal person." Tr. 69-70. The problem has been going on for years. Tr. 71.

The impartial vocational expert, Melissa Tanner, testified and was asked to assume an individual with Plaintiff's same age and education, no qualifying past relevant work, who can perform less than a full range of light work with the ability to lift and carry 20 pounds occasionally and ten pounds frequently, sit, stand, and/or walk for up to six hours, push and pull as much as they can lift, with only occasional climbing of ramps and stairs, never climbing ladders and scaffolds, must avoid unprotected heights, moving mechanical parts, and environments with concentrated exposure to humidity, wetness, dust, fumes, or gases, limited to simple tasks and simple work-related decisions, with no more than occasional interaction with supervisors and co-workers and no interaction with the general public, where time off-task would be accommodated on a limited basis. Tr. 72-73.

Page **8** of **28**


The vocational expert testified that such an individual could work as a marker, DOT code 209.587-034, light, SVP of 2, unskilled, for which there are 319,657 jobs in the national economy; sub assembler, DOT code 729.684-054, light, SVP of 2, unskilled, for which there are 9,312 jobs in the national economy; and mail clerk, DOT code 209.687-026, light, SVP of 2, unskilled, for which there are 2,489 jobs in the national economy.[2]  Tr. 73.

The vocational expert testified that if the individual would be off task up to ten percent of the workday, they could still perform the jobs just described.  Tr. 73-74.  If they were off task twenty percent of the workday, they could not perform those jobs.  Tr. 74.  If the person were to miss up to 20 days of work a month, that would lead to termination.  *Id.*  The

---

[2]  The Dictionary of Occupational Titles (4th Ed., Rev. 1991), is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 416.966(d).  The ALJ may also rely on a vocational expert or other specialist. *See* § 416.966(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for preparation time of "[a]nything beyond short demonstration up to and including 1 month," an SVP of 3 allows "[o]ver one month up to and including 3 months," and an SVP of 4 allows for "over 3 months up to and including 6 months."  *Id.*  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 416.968(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

vocational expert testified that if the person required assistance in setting goals and making plans, and must be introduced to changes in routine gradually, those factors would not preclude unskilled work.  Tr. 75.

## B. The Decision of the Administrative Law Judge

On May 3, 2016, the ALJ issued a decision finding that Plaintiff's disability ended on November 10, 2014.  Tr. 29.  The ALJ found that Plaintiff was eligible for SSI benefits as a child and had been notified that he was found no longer disabled as of November 10, 2014, based on a redetermination of disability under the rules for adults who file new applications.  Tr. 19.  The ALJ found that since November 10, 2014, Plaintiff has had the following severe impairments: attention deficit hyperactivity disorder (ADHD), anxiety disorder with panic attacks, asthma, hypertension, heart palpitations, and a history of pancreatitis.  *Id.*  He has no past relevant work experience, and for that reason, transferability of job skills was not an issue.  Tr. 27-28.

Plaintiff was found not to have an in impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  In making this finding, the ALJ noted that Plaintiff's mental impairments do not satisfy "paragraph B" criteria in that they do not result in two of the following:

marked restriction of activities of daily living; marked difficulties in
maintaining social functioning; marked difficulties in maintaining
concentration, persistence, or pace; or repeated episodes of
decompensation, each of extended duration.  Tr. 19-20.  The ALJ found
mild restriction on Plaintiff's activities of daily living in that he is able to
bathe, dress, and take care of his personal care if he feels like it or with
reminders; can prepare sandwiches, count change, and enjoy watching
television.  Tr. 20 (citing records at Tr. 221-29).  The ALJ found marked
difficulties in social functioning, including trouble controlling his temper,
obeying authority, exhibiting disruptive behavior, and inability to cooperate
with other children.  *Id.* (citing records at Tr. 219, 235, 276).

Only moderate difficulty was found in Plaintiff's concentration,
persistence, or pace, in that a teacher questionnaire indicated Plaintiff
could acquire and use information, although he had serious problems in
changing from activities without being disruptive and in completing
assignments.  *Id.* (citing records at Tr. 218-19, 250).  The ALJ also noted
that progress notes from Meridian Behavioral Healthcare document that
Plaintiff's mental status was essentially within normal limits.  *Id.* (citing
records at Tr. 483-90).  Thought was intact, and there was no evidence of
perpetual disturbance.  Mood was mildly depressed and mildly anxious.  *Id.*

Plaintiff was cooperative and his memory, judgment, and insight were intact. *Id.* His intelligence was estimated to be average to above average. *Id.* No episodes of decompensation of extended duration were noted. Tr. 21.

The ALJ concluded that "paragraph C" criteria were not met in that there was no record of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, along with symptoms of signs currently attenuated by medication or psychosocial support, and any one of the following: repeated episodes of decompensation of extended duration, a residual disease process that results in marginal adjustment that even a minimal increase in mental demands or changes would be predicted to cause decompensation, or a current history of one or more years' inability to function outside a highly supportive living arrangement. *Id.* The ALJ noted that Plaintiff's impairment has not resulted in his inability to function independently outside the home.

In determining Plaintiff's residual functional capacity (RFC), the ALJ noted that the RFC reflects the degree of limitation found in the "paragraph

B" mental function analysis.[3]  *Id.*  The ALJ concluded that, after

consideration of the entire record, Plaintiff has had, since November 10,

2014, the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),

except that he can lift and carry 20 pounds occasionally and ten pounds

frequently; sit, stand, and/or walk up to six hours in an eight-hour workday;

push and pull within the same weight limits; occasionally climb ramps and

stairs; never climb ladders and scaffolds; must avoid unprotected heights,

moving mechanical parts, environments with concentrated exposure to

humidity, wetness, dust, fumes, or gases; is limited to simple tasks and

simple work-related decisions; can have no more than occasional

interaction with supervisors and co-workers and no interaction with the

general public; and would be off task for up to ten percent of the workday.

Tr. 21.

---

[3] Residual functional capacity is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment'* describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

In reaching this RFC determination, the ALJ relied on the medical records which, the ALJ concluded, do not demonstrate any mental-related disability causing a lack of capacity to work.  Tr. 27.  Rather, the evidence showed that Plaintiff lacked motivation.  *Id.*  The ALJ cited records from November 2014 in a follow-up visit with Wanda Liddell, ARNP, at Tri County Primary Care, which indicate that Plaintiff had good attention to hygiene, fair judgment and insight, full orientation, intact memory, normal mood and affect, and was cooperative.  Tr. 24 (citing records at Tr. 430-50).  Those notes also indicate that Plaintiff's ADHD and his anxiety disorder were assessed as stable.  Tr. 432.  October 2014 records of an evaluation by Steven Tucker, M.D., of Shands Neurology Clinic indicated Plaintiff was fully oriented, his language was intact, his attention span and concentration were normal, and his memory intact.  *Id.* (citing records at Tr. 477).  His physical examination produced normal results.  *Id.* (citing records at 477-78).  Records from Meridian Behavioral Healthcare for September 2014 through January 2015 indicated Plaintiff reported hanging out and playing games with friends, riding a bicycle, walking, and raking neighbors' yards.  Tr. 24 (citing records at 487).  His mental status was

reported as essentially within normal limits, although he was mildly depressed and anxious, but cooperative.[4]  *Id.*

The ALJ cited notes from a February 11, 2015, cardiac evaluation by Michael Dillon, M.D., of the Cardiac & Vascular Institute, which resulted in a normal EKG.  A later echocardiogram was reported as normal.  Tr. 24 (citing records at Tr. 504, 506).  Plaintiff was diagnosed with hypertension, anxiety, and transient facial asymmetry.  *Id.*  Dr. Dillon noted Plaintiff's benign hypertension was reasonably stable, and his heart rate and rhythm were regular.  Tr. 25 (citing records at Tr. 511-12).

Based on the medical records and other evidence, and with consideration of Plaintiff's testimony at the hearing, the ALJ concluded that there was no objective clinical evidence to suggest that Plaintiff's anxiety or ADHD are disabling or work preclusive.  Tr. 24-25.  The ALJ also considered Plaintiff's asthma, cardiac condition, and history of pancreatitis, and concluded that those impairments were not work preclusive.  Tr. 24-25. The ALJ noted that records from North Florida Regional Hospital in February 2016, were suggestive of acute pancreatitis, but the condition slowly resolved.  A follow-up ultrasound was normal.  Tr. 25 (citing records

---

[4] Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 70, indicating mild functional impairment.  Tr. 25 (citing records at Tr. 489).

at 535-41).  Plaintiff attended the hearing on February 24, 2016, in a

wheelchair, but explained it was not prescribed, and was used solely due to

the abdominal pain he was currently experiencing.  Tr. 26.

The ALJ gave some weight to the State agency psychological

consultant's opinions that Plaintiff has mild functional limitations in activities

of daily living, moderate functional limitations in maintaining social functions

and concentration, persistence, or pace, and that Plaintiff retains an

adequate capacity for understanding and remembering new information

and procedures.  Tr. 26 (citing records at Tr. 462-66).  However, the ALJ

found that Plaintiff had greater limitations in the area of social functioning

than found by the State Disability Determination Services' physicians.

Tr. 27 (citing records at Tr. 542-69).  The ALJ also assigned greater

functional limitations than those determined by the State agency medical

consultant, who opined that Plaintiff had no exertional limitations.  Tr. 27

(citing records at Tr. 515-21).

The ALJ concluded that the objective evidence does not support a

finding of any physical or mental limitations that would render Plaintiff

disabled, but shows instead Plaintiff's lack of motivation; and that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms are not entirely consistent with the medical and other evidence in the record.  Tr. 27, 23.

Based on the RFC determination and Plaintiff's age, education, and experience, the ALJ found that Plaintiff could perform the jobs testified to by the vocational expert at the hearing—marker, sub assembler, and mail clerk, which are all unskilled, light exertional level, and SVP 2.  The ALJ found that those jobs exist in the national economy in significant numbers. Tr. 28.  Accordingly, the ALJ concluded that Plaintiff's disability ended on November 10, 2014, and he has not become disabled again since that date.

## II. Legal Standards Guiding Judicial Review

Under 42 U.S.C. § 1382(a)(3)(H)(iii), individuals who are eligible for SSI as children must have their disability redetermined under the rules used to determine disability for adults.  That provision also requires that the medical improvement standard under section 1614(a)(4) does not apply to disability redeterminations at age 18.  *See* 42 U.S.C. § 1614(a)(4).[5]  When a child who is receiving SSI attains 18 years of age, the agency reviews the transition to adult SSI applying the five-step sequential evaluation set forth

---

[5] Section 1614 of the Social Security Act is codified at 42 U.S.C. § 1382.  *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006) (unpublished).

in 20 C.F.R. § 416.920(b)-(g).  Medical improvement is not a factor for

consideration since the concept of redetermination is to treat the transition

to adult SSI as a new application.  *See* 20 C.F.R. § 416.987(b) ("[W]e will

not use the rules in § 416.994 for determining whether disability

continues."); 42 U.S.C. § 1382c(a)(3)(H).

A disability is an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less

than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

Pursuant to 20 C.F.R. § 416.987(b), in a redetermination of disability

for a person turning age eighteen, the Commissioner uses the rules for

adults who file new applications as explained in 20 C.F.R. §416.920(c)-(h).

First, the claimant must show he has a severe impairment.  20 C.F.R.

§ 416.920(c).  This step is a threshold inquiry, and the ALJ does not go on

to the next step if the claimant fails to meet this step, but will find claimant

is "not disabled."  *See also* McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th

Cir. 1986); 20 C.F.R. § 416.920(c).  Second, if the claimant shows that his

severe impairment or combination of impairments meets or equals the criteria in the Listings of impairments, the Commissioner will find he is disabled.  20 C.F.R. § 416.920(d).  If the claimant's impairment or combination of impairments cannot meet or equal one of the listings, the ALJ considers at the next step whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.[6] § 416.920(e).  If the claimant establishes he cannot perform his past relevant work, or if he has no past relevant work, the Commissioner will consider the same residual functional capacity assessment made under § 416.920(e), together with the vocational factors of age, education, and work experience, to determine if the person can make an adjustment to other work.  If so, the Commissioner will find the person is not disabled.  *See* 20 C.F.R. § 416.920(g)(1).

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person

---

[6] Pursuant to 20 U.S.C. § 416.920(e), in determining the RFC in a redetermination case, the Commissioner will use the residual functional capacity assessment at the fourth step of the five-step sequential evaluation process set forth in section 20 U.S.C. § 416.920(a)(4)(iv).

would accept as adequate to support a conclusion." Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[7] The Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

---

[7] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

Plaintiff bears the burden of proving that he is disabled and,

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.  The responsibility

of weighing the medical evidence and resolving any conflicts in the record

rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.

2007) (unpublished).  The opinion of the claimant's treating physician must

be accorded considerable weight by the Commissioner unless good cause

is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.

1997); 20 C.F.R. § 416.927(c)(2).[8]  "The Secretary must specify what

weight is given to a treating physician's opinion and any reason for giving it

no weight, and failure to do so is reversible error."  MacGregor v. Bowen,

786 F.2d 1050, 1053. (11th Cir. 1986)  The ALJ may discount the treating

physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804

F.2d 1179, 1181 (11th Cir. 1986).

---

[8] This provision applies to claims filed before March 27, 2017.  *See* 20 C.F.R.
§ 416.927, "Evaluating opinion evidence for claims filed before March 27, 2017."  For
claims filed after that date, the applicable provision is 20 C.F.R. § 416.920c, titled "How
we consider and articulate medical opinions and prior administrative medical findings for
claims filed on or after March 27, 2017."

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 416.927(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 416.912, 416.913, 416.927, 416.945.

### III. Analysis

Plaintiff challenges the determination that his disability ended on November 10, 2014, and contends that substantial evidence does not support the decision.  Plaintiff contends, specifically, that the ALJ failed to consider evidence that he would not be able to maintain employment due

to his expected level of tardiness and absenteeism.  ECF No. 15 at 118-19.

To support this contention, he cites notes of a mental functional capacity

assessment performed by James Mendelson, Ph.D., which state that

Plaintiff may be "apt to have lapses in focus, effort, and reliable

attendance."  ECF No. 15 at 20 (citing records at Tr. 395).  However, that

assessment also states that "[m]ood fluctuations will occasionally intrude

on concentration and the completion of tasks, and/or attendance, but not to

the severity and frequency extent that adequate work performance is

precluded."  Tr. 395.  The assessment also states, "Although claimant may

be apt to have lapses in focus, effort, and reliable attendance – the

frequency, intensity, and duration of these occurrences would not be

expected to significantly or routinely detract from claimant's ability to

participate/complete simple, routine occupational tasks at a reasonable

pace, under normal supervision within medical/attitudinal parameters."  *Id.*

That same assessment indicates that Plaintiff is not significantly limited in

his ability to understand and remember simple instructions and can work in

proximity to others, although he would perform best in an environment that

does not require extensive social interaction.  Tr. 393, 395.

Plaintiff also cites Dr. Mendelson's note stating that "[t]here are a

number of very serious problems in CPP [concentration, persistence, and

pace], but these are clearly related to his absences from school."  ECF No.

15 at 21 (citing records at Tr. 409).  Dr. Mendelson did not, however, opine

that Plaintiff's numerous absences from school were the result of any

mental impairment.  Instead, Dr. Mendelson opined that Plaintiff had no

marked limitation in the ability to be punctual within customary tolerances

and perform activities within a schedule.  Tr. 393.  He also concluded

Plaintiff had no marked limitation in the ability to complete a normal

workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable

number of rest periods.  Tr. 394.  Although he found Plaintiff had moderate

limitations in these areas, he concluded in his functional capacity

assessment that Plaintiff can maintain concentration, persistence, and pace

throughout the workday and his mood fluctuations would not preclude

adequate work performance.  Tr. 395.  Dr. Mendelson opined that Plaintiff's

mental impairment was not disabling.  Tr. 10.

The mental residual functional capacity assessment and psychiatric

review submitted by consultant Val Bee, Psy.D., also relied on by Plaintiff,

acknowledges that Plaintiff was hindered at school by "excessive

absenteeism."  ECF No. 15 (citing records at Tr. 468).  However, nothing in

Dr. Bee's notes indicate that Plaintiff's excessive absenteeism from school

was caused by a mental impairment.  Dr. Bee's notes state, instead, that

"ADL limitations appear frankly willful or volitional in nature."  Tr. 468.

Moreover, Dr. Bee opined that Plaintiff was not significantly limited in the

ability to perform activities within a schedule and maintain regular

attendance and punctuality within customary tolerances.  Tr. 452.  In his

functional capacity assessment, Dr. Bee concluded that there is no credible

basis for finding significant limitations in Plaintiff's adaptive skill

development, and that Plaintiff is mentally capable of well-structured task

activity.  Tr. 454.

In support of his contention that Plaintiff's mental impairments will

cause excessive absenteeism precluding gainful employment, Plaintiff also

cites a February 11, 2016, letter from the administrator of Plaintiff's school,

which notes that Plaintiff is at times violent, argumentative, lethargic,

sleepy, disorganized, forgetful, and disrespectful.  *See* Tr. 293.  The ALJ

cited this evidence in support of his finding that Plaintiff does have marked

limitation in social functioning.  Tr. 20.  The administrator's letter, however,

does not provide evidence that Plaintiff's absenteeism is caused by a

severe mental impairment precluding gainful employment at a light,

unskilled level with appropriate limitations as to interaction with coworkers

and the general public.

At the hearing, Plaintiff testified that he hates school and is often absent because all the people make him a "nervous wreck." Tr. 46. He testified he often gets panic attacks due to "all the kids talking" and teachers "yelling at the kids." *Id.* He does not like going to the store because he does not like seeing people, although he can interact without problems with family members and with his friend who visits him. Tr. 58.

These symptoms were accommodated in the RFC determined by the ALJ, which limited Plaintiff to jobs requiring simple tasks and simple work-related decisions, with no more than occasional contact with supervisors and co-workers, and no interactions with the public. Tr. 21. The decision of the ALJ, based on all the evidence and the testimony of the vocational expert, that there are jobs in the national economy that Plaintiff can perform is supported by substantial evidence in the record. That evidence is identified and discussed in detail in the decision. A review of the complete record discloses nothing to support Plaintiff's contention that his mental or physical impairments will result in excessive tardiness or absenteeism in a work setting or will preclude gainful employment at a light, unskilled level, with the limitations set forth in the RFC.

Medical records from Meridian Behavioral Healthcare contain a psychiatric evaluation form dated September 17, 2014, which indicates that

although Plaintiff had concerns about his panic attacks, he reported no

social anxieties or awkwardness in interactions with others, and that he

reported having close friends.  Tr. 488.  He was advised to continue with

the medications prescribed by his psychiatrist.  *Id.*  Notes concerning

Plaintiff's visits to his psychiatrist, Umesh M. Mhatre, M.D., in 2014 indicate

that Plaintiff's mental status and affect were appropriate, he was

cooperative, his mood was normal, and his cognition was intact.  Tr. 308,

310, 391.  Progress notes from January 2015 note that Plaintiff was

cooperative and his affect and behavior was within normal limits.  Tr. 533.

He was oriented in four spheres, with grossly intact memory, and his

intelligence was estimated to be in an average or above average range.  *Id.*

He appeared interested in day to day activities, finds pleasure in daily life,

and was hopeful for the future.  *Id.*  The notes state, "Observed affect was

not congruent with the patient's report of mood."  *Id.*  Notes from a

December 2015 visit did indicate symptoms of mild depression and

moderate anxiety, and he was recommended for individual and group

therapy and medication management.  Tr. 545.  Meridian Behavioral notes

from February 2016 indicate that Plaintiff reported his prescribed Valium

was effective and helping with his symptoms.  Tr. 621-22.

Plaintiff has not identified any objective medical evidence that supports his contention that his symptoms will inevitably cause him to be excessively tardy and absent from work.  The decision of the ALJ that Plaintiff is not disabled as of November 10, 2014, is supported by substantial evidence and should be affirmed.

## IV. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner that Plaintiff's disability ended on November 10, 2014, and that Plaintiff has not become disabled since that date should be **AFFIRMED** and Judgment entered for Defendant.  Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk should be directed to substitute Deputy Commissioner for Operations Nancy A. Berryhill as the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 21, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.**

Case No. 1:17cv183-MW/CAS

Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.